Good morning, Your Honors. I am Paul Stripmatter. I am counsel for the Leanne Samples estate and for her husband, Brooke Samples. I would like to reserve, Your Honor, four minutes for rebuttal. There's a significant difference between what happens in the delivery of regular mail and certified mail by the United States Post Office. Regular mail simply involves the leaving of a letter in the postal box. The law has such faith in the likelihood of receipt of that mail that the mere act of mailing creates a presumption of receipt of the letter. Certified mail is very different. Certified mail restricts the terms of delivery. It tells the post office not to deliver the letter unless someone is there to sign for it. It requires the written acknowledgment of the delivery by signature of the recipient. It involves proof of the actual delivery of the mail. If no one is present to give the signature acknowledging the actual delivery has been made, the letter is returned to its sender and the letter is deemed not to have been received. Certified mail is therefore a form of personal service or personal delivery. I don't find that argument at all persuasive. Myself, I don't know about my family. Certified mail is mail in the United States Postal Service, any way you cut it. It is mail of the Postal Service, but it's a quite different delivery system. It may be different, but it's not tantamount to personal service, at least from what I can tell. Well, it does involve the personal service, because it requires that there be a... Well, it just means the postman comes up to the door and knocks on the door. And the postman is not required to hand it to the personal service. If you're talking about personal services, we think about in process. You know, personal service is a whole scheme that has to be, one has to go through. You can hand it to the person personally, the name party. Or, you know, there's substitute service on somebody who, an adult who lives in the residence. You can serve it that way. But, you know, with certified mail, the postman goes out there and knocks on the door. Anybody can just sign for it, and that's it. Well, it requires the actual delivery and the acknowledgement that it's been received by the signature of the recipient. The question in my mind is whether it constitutes mail within the meaning of the statute. Because the statute, of course, says delivery or mail, and the issue becomes where does... Well, we know that this legislature has said that if they just dropped it in a mailbox, put a stamp on it, put it in the mailbox, send it off, and the recipient claims, I never got it. Too bad. There is a presumption of... Well, that's too bad. As I understand it, it's just about unrebuttable from what I understand from what the Washington Supreme Court has said. That's it. There may be facts that can be presented to overcome that presumption, but generally the courts have found that that process, one of mailing, is the presumption then prevails, and the service is sufficient under the statute. That's correct. But certified mail... It's a certified mail where you're arguing that presumption should not, that should not apply. We're dealing here with the interpretation of the State statute. Right. We are, yes. Dealing with RCW 48.18.290. Yes, sir. The question is whether using certified mail is, quote, mail, close quotes, within the meaning of that statute to effectuate a termination of the policy, at least as I see it. So if that's correct, is there any reason we shouldn't certify that issue to the Washington State Supreme Court so that if, you know, if they want to take it and tell us the answer, they can do it? I actually thought about that at one point as to whether or not we should make that request. I don't know any reason why this Court wouldn't want to do that if it decided that that's what it wished to do. I think it is an issue of, of course, of Washington State law. I think that the Bazin case is very persuasive. But the Bazin case does not involve this particular statute. It does involve the general issue of using certified mail in place of mail and finding that it's tantamount to delivery. But I think that this Court could, in fact, certify this to the Washington State Supreme Court. Do you have a sense, and maybe the other side will be able to answer this question a little bit better. But is it common practice for the insurers in the State of Washington when they are going to cancel a policy for nonpayment to use certified mail? There's nothing in the record on that, Your Honor. I could give you a personal opinion, but there was nothing in the record that I recall that addresses that issue. My guess is that they generally don't because this issue doesn't seem to have come up before. This is an issue of first impression on this particular statute. This particular insurance company in this particular case, dealing with the insurers here, seemed to use certified mail all the time. It did with this client all the time. It certainly did. But I have ‑‑ it's just my presumption that generally that's not the way it's  When we look at this statute, we've got to really think about the public policies that are involved. And I think the public policy is very important as it relates to this specific statute. And that probably distinguishes all the cases that are cited by both sides because, in fact, we don't have a decision on this particular statute. Let me go back to Judge Gould's question and the question I started out with, and that is, you know, if you drop ‑‑ if they drop it in the mail, I gather that there's a presumption here in Washington under Washington law. There is in California that if you ‑‑ Yes, there is, Your Honor. If you put something in first class mail in the mailbox, there's a presumption that the recipient will receive it. That's correct, Your Honor. But it can be rebutted, at least in California. Okay. Is it your ‑‑ under the way this statute is constructed, is that presumption here, if it plays, if it's in play, is it rebuttable? It is rebuttable, yes. It simply creates a presumption or a prima facie case. But it is rebuttable. In fact, one of our arguments here, of course ‑‑ Well, what do you make with the Supreme Court's statements, and I forget which case it is, that you don't have to prove actual receipt. What does that mean? How does that fit into this? If you can present evidence in the record that would indicate that there were such circumstances that the presumption should be overcome, then that would create an issue of fact, and we believe that there is an issue of fact in this case. Well, that still doesn't get to my ‑‑ the Supreme Court ‑‑ I forget which case it was, but the Washington Supreme Court ‑‑ or Court of Appeals said The case is the Court of Appeals. The Court of Appeals said you need actual ‑‑ the insurance company doesn't have to prove actual receipt. That's correct, Your Honor. So I'm trying to understand how that fits in with ‑‑ if it's an irrebuttable ‑‑ I mean, if it's a rebuttable presumption. Well, it depends on whether or not sufficient evidence is presented in the record to create an issue of fact to go to trial. If there's not sufficient evidence presented, then it's ‑‑ Well, let me put it this way, then. Suppose all the evidence shows that they didn't get it. How do you square that with what the Supreme ‑‑ with what the Court of Appeals says, you don't have to prove actual receipt? That in and of itself I don't think is sufficient, because the Court has said we're not just going to get into swearing contests whether or not it was received. But when there are other facts, such as here, where they sent other certified letters and they were not received, they came back, now Cornhuskers is on notice not only of the general concept that certified mail is not as likely to be received as regular mail, that's conceded in many, many of the cases that we've cited, but here they had specific knowledge of the fact that the certified letters weren't getting through to the catchments. That's because they wouldn't go pick them up. Well, but there's nothing in the statute, Your Honor, that ‑‑ first off, the they denied that they were aware of the fact that they needed to go pick it up. But that's undisputed in the record. They didn't read the notice that was left in their mailbox. They said that they did not receive such a notice. But we do have a copy of that notice now, because, of course, it went back to Cornhuskers. And what does it say? It says that there's a letter from Berkshire. It doesn't say it's from Cornhuskers. So even if they had gotten that notice, it doesn't put them on any notice that there was a letter that was being sent by their insurance company. Now, would that be any difference if the original letter was just mailed by regular mail and it said Berkshire on it instead of Cornhuskers? Well, at least the letter would have been in their box where they could have opened it. Now there's a suggestion in their box. The suggestion is now that you want to read into the statute that they have to go to the post office themselves during the weekday between five and nine to obtain this letter. And the statute doesn't require that at all. Now, there's a lot of public policy involved in insurance coverages. Certainly auto insurance is mandatory in the State of Washington. And insurance policies are not purely private affairs but are bound with many public policy considerations. And as Your Honors know, this involves a risk-spreading theory in our society. These policies affect third persons who are innocent, who are entitled to the maximum protection possible from injuries that are caused by insurance. And also there's a policy here that we need to make sure that there's appropriate notice to the insured so that if their policy is going to be canceled, they can have the opportunity to go out and secure another policy to protect themselves from any consequences. Two questions on this point. In the first, there were some certified letters that were sent to them that they did in fact receive. I mean, there is evidence in the record of that. There is, Your Honor. I will remind you, however, that they were at two different addresses. And I think the number that got through on the second address, which was where they were at the time of this incident, that two of them got through and three did not. All right. The other question is if they went to the mailbox and they looked in there and they saw a letter that was from Berkshire and they just threw it away because they didn't know who that is, that wouldn't have prevented them from being held or that would have allowed the insurance company to then take the position that it was canceled because they did in fact, the letter was there. How is that any different than taking a look at the notice and saying they didn't know what it was and so they didn't go get it? Well, in the first instance, the insurance company has used the mailing section of the statute. And they've complied with it. But a fail is a mailing. But there's so many more additional steps that are involved in that that I would suggest to you that it's a delivery, not just a mailing. And obviously it is a delivery because it provides for requiring the hand delivering it and getting the written acknowledgment. This creates an ambiguity in the statute. That's the ambiguity when the statute says mailing or delivery and now they use certified mail, which I suggest to you is a delivery process, but at a minimum creates an ambiguity in the statute. Do you know how long the Postal Service has been using certified mail? I'm sorry, sir. I don't. And I don't recall anything in the record about that topic. I do know that. Do you know when this statute was adopted? That I certainly should know. And I apologize. Oh, that's okay. I don't know either. So I should know. There are many cases that you've seen in our brief that across the country where certified mail is not as likely to be received by the recipient as regular mailing. There is a difference, and the courts have recognized that. I think the Conrad case from Indiana from 1997 goes into quite a bit of detail about that analysis. And there are several other cases that we have cited where courts have found that if the insurance company is going to use, and by the way, these are cases dealing in an insurance context, if they're going to use certified mail, then they're going to have to comply with the delivery aspect of the statute and not the mailing aspect of the statute. So now they have to prove that, in fact, there was a delivery. We think that the statutory construction in this case and the intent of the legislature is shown that the certified mail was not sufficient here. You know, we cited many statutes at page 30 in our brief where the legislature has indicated that when it intends for certified mail to be used, it says so. And several statutes specifically do require the use of certified mail. But where the legislature intends for regular mail to be used, it simply uses that term, mail. And as a result, the intent of the legislature, I suggest, is not that certified mail be used here for mailing. Instead, if the insurance company is going to use certified mail, it's for the delivery of the letter or the notice that's involved. Certainly if you look at subsection 2 of the statute, when it states how the mailing is to be affected, shall be affected, it simply calls for a fixing postage to the envelope. But that isn't what's done with the certified mail. You have to take it to the post office, you have to fill out additional paperwork, and you have to pay an additional fee. That's not the language that's in subsection 2 of the statute. So the statute obviously is not contemplating certified mail when they describe what mailing is. And certainly, as I mentioned before, the statute says nothing about the insured being required to go to the post office if, in fact, they receive just a notice that a letter is being held for them sometime between 9 and 5 on a weekday. Subsection 3 of the statute states that an affidavit is filled out by the person mailing the notice. Well, an affidavit wouldn't even be necessary and would be superfluous when you have certified mail because you already have the paper trail from the certified mail. Mr. Schmitter, if you want to hold four minutes for rebuttal, you would have to stop. I will, then. Thank you, Your Honor. Thank you. Good morning, Your Honors. Irene Hecht. I represent the respondent, Cornhusker Casualty Insurance Company, which asks that you affirm Judge Layton's ruling. Yes, ma'am. We'll give you a few seconds extra if we have to. Okay. Okay. Let's start again. Okay. You know who you are. Just keep your voice up because I can't hear you. Keep it up? Yes. I couldn't hear you. There's some sort of buzzing sound sometimes. Okay. Is this loud enough? That's fine. Keep your voice up like that. That's much better. As I was indicating, Cornhusker has asked that you affirm Judge Layton's ruling granting summary judgment because the policy was properly canceled for nonpayment of the premium. Between the time that this policy originally incepted in June of 2000 and when it was ultimately canceled for nonpayment of the premium in October of 2004, Cornhusker sent 11 notices of cancellation for nonpayment of premium to Rockery's. All of those cancellations were received by Rockery's with the exception of three. One in 2002, and then the last two that were sent, including the one that was sent when the policy was ultimately canceled. There was clearly a pattern and practice on the part of Rockery's to not pay their premium in a timely fashion. All of the notices of cancellation were sent in the same manner by certified mail. What does that point establish here?  Well, simply that in terms of the context of this case and an argument that somehow certified mail is different and unusual. Well, it is different. It's not the same as taking an envelope, folding it up, dropping it in the mailbox. It is different. At the other end it's different, and at the front end it's different as well. You have to go down and pay and sign a card. Actually, that's not accurate. If you look at the declaration of Jackie Collins, the employee at Cornhusker who supervises this process, they do all of this at Cornhusker's office, and they affix, they put the notice of cancellation in an envelope. It's different on the other end. It's different on the receiving end. I will agree that it's different. Let me tell you what bothers me about this case. And I haven't determined yet what I would rule if I have to reach the issue first. But it seems that certified mail gives the insurer some comfort if they know something has been received and it's signed for. But yet it does seem like in general use of certified mail is less likely to get in someone's hands than regular mail, or at least that's possible, that you view it that way. So why isn't this like a question of policy that we should tender to the state supreme court? I mean, why should we be, as a federal court, trying to decide an issue about how insurance policies are terminated in the State of Washington if there's any ambiguity in the statute? Well, Your Honor, I think the statute is clear, and I think that the Washington State Supreme Court has given some clear indications of how the statute would or should be interpreted. The statute sets forth what's necessary to accomplish a mailing, and certainly this mailing by certified mail fell within those requirements of the statute. In other words, 48.182902 says that in order to accomplish a mailing, you have to place the notice of cancellation in a sealed envelope directed to Rockeries at its last known address, have the proper postage affixed, and deposit it with the U.S. Postal Service. And that's precisely what Cornhusker did in this case. We also have clear indications from the Washington Supreme Court that when a notice is required to be delivered by mail, that this is a broad enough term to encompass all forms of mailing, while we may not have a specific case that addressed the statute. On that point, which is very important, I mean, do you have any case where the State Supreme Court has said or implied that use of certified mail is okay to terminate an insurance policy? Terminating an insurance policy raises policy issues for people who get injured and make claims against the policy, not just the insured, you know, but the public out there. Right. I understand what you're saying, Your Honor. There is not a specific case in Washington that has addressed certified mail. We do have the Wininski case, Wininski v. State Farm, which I think was alluded to by the Court earlier, where the Court held, in that case, the insured did not actually receive the notice. It was mailed to them, but they did not actually receive it. And the argument was made by the insured that because of the unreliability of the mail service, the carrier should be required, the insurer should be required to prove not only actual mailing but actual receipt. And the Court specifically rejected that argument and said that under RCW 4818-290, it said the difficulty with this position is that the unambiguous language of the quoted statute does not impose this requirement. So although the case did not specifically address certified mail, it does make it clear. I mean, a similar argument was made. The argument was made, well, you know, the mail is unreliable, you won't always get what's mailed to you, therefore, the carrier ought to be required. I understand that, but the case doesn't address the difference between the percentage of letters that get in people's hands by regular mail versus certified mail. I don't know if there is a material difference on that, but I'm still concerned that that's an issue for the State Supreme Court, if they would, if they're willing to look at it. Well, I don't think that there is any evidence in this record that would suggest that it was less, that these letters were less likely to get to Rockery's because they were sent by certified mail. The testimony of the Catchmans, who are the owners of Rockery's, was that they were having difficulty with their mail during this time period, and that the two slips that were put in there, the post office attempted to deliver this cancellation letter to them twice, once on October 5th, the second time on October 15th. So in theory, there was a greater chance that they would get notice because it wasn't just put in their mailbox once, they had notices put in twice. Their testimony was that they didn't receive either notice. Arguably, if they didn't receive either notice, if instead of putting the notice in the mailbox the first time, they had put the letter in the mailbox the first time, they wouldn't have received that either, because if they didn't get the notice, why would they have gotten the letter? Here, there were two attempts made, and I think the rationale behind the cases that says that, you know, that it's less likely to be received, if you look at the two, you know, two working members of the family, it might be difficult for them to go down to the post office during business hours and pick it up. But this was a business. Clearly, a business has to be in a position. This was a commercial auto policy. They have to be in a business to accept and receive mail during business hours. The issue for us, though, isn't really, you know, how do these particular people, what's the likelihood that they get this certified mail? The issue for us is what did the state Supreme Court, rather, what did the state legislature intend by its language in 48.18.290? Did they intend that termination by mail would include certified mail or not? Well, I think that it's pretty clear that they did. I mean, mail is mail. Certified mail is a form of mail. The statute, I think the language is broad enough to encompass regular mail and certified mail and registered mail. There is a Washington Supreme Court decision, the Continental Sport Corporation versus Department of Labor and Industries decisions, where the court recognized that when a notice is required, when a statute requires that a notice be sent by mail, that's broad enough to encompass postal matter carried by the U.S. Postal Service. I mean, this is a form of mail. And the statute simply says that it has to be actually delivered or mailed.  Yes, there is a slight difference at the other end. Instead of simply putting the letter in the mail, in the mailbox, they put a notice if you're not there or somebody isn't there to sign for it. And they attempt to do that twice. But it's clearly matter that's carried by the U.S. Postal Service. It's clearly a form of mailing. If the legislature had not intended it to include certified mail, it could have said so. It could have been more specific. But it used a broad general term, mail. And I think that that is ñ it's fairly clear that that encompasses all forms of mail. And I think that's ñ Can the insured ever show that they ñ wow. Are there any circumstances that an insured could show that they didn't get it? No. Not under the statute. So it's an irrebuttable presumption? Yes, it is. That's what the Wysinski case held. In that case, the insured didn't get it. And the court didn't talk about a rebuttable presumption. The court just said that under our statute, receipt is not required. Under the unambiguous language of the statute, receipt is not required. All that's required is proof. That was a regular mail case, though, not a certified mail case. Right. That's correct. But I don't think that that makes a difference, Your Honor, in terms of the concept of whether there's some rebuttable presumption. In other words, under the statute, all that is required is proof of mailing. Now, whether you want to define mailing to include certified mail or not, setting that issue aside, under the statute, assuming that certified mailing qualifies as mail, it is ñ there's no discussion in any of these cases with respect to this particular case. It's just a matter of whether you have a similar statute. Okay. So let me assume for a minute that the presumption is irrebuttable, okay, so that if something's mailed, then it doesn't matter whether someone gets it or not. Correct. Okay. So if that's the case, it seems to put into high relief even more the issue, at least in my mind, whether the legislature would have intended that a policy could be terminated by a certified mail. Because if you say it's irrebuttable presumption, that means in every case where someone sends something by certified mail and it's not signed for or seen, a policy is terminated. Why wouldn't an insurance company use certified mail in every case if they want it to terminate? Well, I think the fact that it's sent by certified mail doesn't mean that the insured doesn't get it. I think certified mail is intended to try to get actual delivery to the insured. The statute clearly contemplates, I mean, the legislative intent is clearly to try to have achieved delivery, but the statute also clearly contemplates that there's going to be cases where you can't get it. The statute talks about failure to locate or failure to deliver and requires the carrier to keep any returned mail in those situations. So I don't think that the point of this, it's clear that the legislative intent was to try to achieve delivery, but at the same time recognize that you need finality and that all that is required to meet the requirements of the statute is proof of mailing. Actual receipt, I mean, even sent regular mail, there's, you know, for example, in this case, as the catchment said, if they were having problems with delivery of their mail and their regular mail wasn't getting delivered, the letter may have been mailed and never gotten to them. And the statute still says under those circumstances there is the cancellation is effective. And I just don't see that there's any significant difference between certified mail and regular mail in the context of a statute that makes proof of mailing and not actual receipt the test for a valid cancellation of the policy. Would, you know, there's a case called Isaacson. Yes. And in there they seem to suggest that an insured could show that they never received. You know, I think that's an over-reading of that case. I mean, what the court said was it was a summary judgment that was being challenged. And I think that, frankly, this is just simply a sentence in the case saying that there's no genuine issue of material fact here. I don't think that it really suggests that what they said is there's no evidence in the record that the address used by American Economy was not the correct address or that the U.S. Postal Service would not or could not have delivered the mail. Without such evidence, there's no genuine issue of material fact. I mean, to me, that's just a statement. That seems to suggest that if they could put on evidence that the Postal Service was not able to deliver it, then they never got it and, you know, it was never properly served. Under the statute, it has to go to the correct address. So in theory, that could create an issue of fact with respect to whether there was proper service under the statute. But I don't think that the – the Washington court has been so clear in the other cases where it's specifically addressing the issue of whether actual receipt is required and whether only proof of mailing in the Winnissippi case plus the Tremel case and the Trinity case, that I just don't – I don't think that they are intending to suggest here that this would be – this creates some sort of – I think they're simply saying in this case, based on the record, there wasn't any issue of fact. They also go on to say, although Ms. Isaacson stated she did not receive a cancellation notice, an insurer is not required to prove actual receipt if statutory mailing procedures are followed. That's the very next sentence. And so I think it's clear they're acknowledging that there's just no issues of fact here, that the rule in Washington is that we're not – that they're not required to provide – to prove actual receipt if statutory mailing procedures are followed. Let me ask you a question I asked the counsel. Is it common for insurers to use – if you know, I don't know, maybe you don't know. You know – Do they use certified mail pretty regularly up here? In my experience, I have seen this done representing insurance companies. Certainly, I think Cornhusker's practice, as evidenced in the declaration of Jackie Collins, was to use certified mail. I think in their mind, they thought it made it more likely that it would get to be insured because they would – it would be, you know, someone would attempt to actually deliver it to them or to their home and get – somebody would sign for it. But, again, there's nothing – there is nothing formally in the record on that. And the practice of this company, I believe, was to use certified mail to deliver notices of cancellation. And certainly, the 11 previous or 10 previous ones that were sent to – Is Cornhusker's a fairly large insurer here in the state of Washington? I think they – you know, that I don't know the answer to. They do write policies, obviously, here, commercial policies. I don't think they write personal auto policies, but they do write commercial auto policies. I don't know where I'm out of my time, but I – just briefly. Two minutes left. A little, yeah. A little more than two minutes left on the clock. Okay. I'd just like to address quickly again the question of whether certified mail is mail. As I've indicated, I believe that there is authority in Washington where the Washington Supreme Court has recognized in the Collins v. Loomis and Nettleton case, the issue was compliance with a service requirement under Civil Rule V, which required for service by mail that the papers be deposited in the post office addressed to the person on whom they were being served with the postage prepaid, which is very clear. They argued, well, they served them by certified mail, and they argued that that didn't comply with the rule and wasn't sufficient. And the Washington Supreme Court said we find no justification for precluding the use of certified mail absent express language to that effect. I think that's a pretty clear indication that when you have a statute that requires service by mail, that would encompass certified mail. You know, unless there's something specifically in the statute that says you can't use certified mail. The Washington Supreme Court has also held that under statutes that did require service by certified mail or registered mail, actual receipt is not required unless the statute specifically provides it. So that would, again, be consistent with RCW 48-18-290's requirement that with mailing, actual receipt is not required. And the Court has made that same finding in the context of statutes that required service by certified mail. Even though it had to be served by certified mail, it still didn't have to prove actual receipt of the certified mail unless the statute so specifically found. And there's at least two cases in that regard. The Marriage of McLean case, which dealt with a service of petition to modify child support, and the Baker v. Altmyer case, which dealt with service of notice of a mechanicman's lien under a mechanicman's lien statute. Again, they're not directly on point, but I think it's very clear that the Washington State Supreme Court would recognize that actual notice is not required when you're dealing with a statute that requires service by mail. All that's required is proof of mailing. And in this particular case, that's precisely what was done. The envelope was the notice was placed in an envelope pre-addressed to the individuals. Kornhusker attached the certified mail receipt, attached, affixed the postage, delivered it to the post office, and they delivered it. We believe that qualifies or clearly falls within the scope of what the statute contemplates. Proof of actual receipt is not required, and the policy was validly canceled. Okay. We're past your time. We appreciate the argument. Thank you very much. With all due respect to counsel's argument, this is not an irrebuttable presumption. The Bazin case specifically says, not dealing with this statute, but dealing with this issue of whether or not certified mail and the difference between mailing and certified mail, they said the presumption is rebuttable. That's at page 730. Judge, you were correct, Judge Baez, in citing also the language, of course, from Isaacson, where the Court specifically talked about evidence that could be admitted to create an issue of fact for trial. In addition, looking at the statute itself, subsection 3 says, the affidavit of the individual making or supervising such a mailing shall constitute prima facie evidence. It's not an irrebuttable presumption, but there must be evidence to overcome the presumption that's involved. Next. I also agree, I don't think that there's any relevancy to this issue about the fact that the catchments were late in making other payments, but the record also indicates absolutely they made their payment every single time when they were given notice. Every single time. And those payments were accepted. It's late. That's correct. Those payments were accepted. Kind of risky, though. Could be. I will say this, and if you read the record, I think that Judge Leighton, with all I'll tell you what I think is going on, and he talked about this, and I think that influenced him on the decision he made. With all due respect, I don't believe that that's what should be influencing either he or this Court in making the decision on what is the appropriate interpretation of this statute. The Wineski case did not involve certified mail at all, so it really doesn't relate to the issue that we have here. And as I said, at a minimum, there is an issue of fact here. We know that the letters had come back so that Cornhuskers was on notice that their certified mail was not working. We know that they had always paid their premiums. We know that there was a gate there, and the evidence shows from the post office that for that reason they will not open the gate to deliver certified mail. So there's quite a bit of evidence here to overcome that presumption. I'm going to ---- They did acknowledge they received the notice of the mailings that was left, that they were to go in and pick up the letter. They did receive those notices left by the postman. The record is that they deny that they received those. There's a declaration from the catchments where they said they did not receive those. And the argument was that they didn't recognize who the sender was and they ignored it. No, frankly, we have put that argument in because we were able to get that notice that was returned to Cornhuskers, and we saw that it said Berkshire, but I don't think that they say that they saw it was Berkshire. They say they did not get those notices at all. We had another argument in this case on the equitable estoppel. I will submit that on the briefing. And I will close with this. I think this is a public policy issue under this statute, a public policy of the State of Washington. And if this panel feels it's appropriate, we would ask that it be certified to the State Supreme Court to make that decision. However, we believe that we have made our case here and that under the public policy, under the interpretation of this statute, that certified mail does not fall under the mailing prong. It falls under the delivery prong. And as a result, the summary judgment should be reversed. Thank you very much. Thank you, Mr. Strittmatter. We appreciate the professional and forceful arguments of Mr. Strittmatter and Mr. Strittmatter. Thank you both. The Court will recess for 15 minutes. All rise. This Court will recess for 15 minutes. Okay, thank you. I'll take it.
judges: Gould, Paez, Strom